IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ACCELERATION BAY, LLC, a Delaware Limited Liability Corporation,<br><br>Plaintiff,<br><br>v.<br><br>AMAZON WEB SERVICES, INC., a Delaware Corporation,<br><br>Defendant. | Civil Action No. 22-904-RGA |

MEMORANDUM OPINION

Jonathan A. Choa, Philip A. Rovner, POTTER ANDERSON & CORROON LLP, Wilmington, DE; Paul J. Andre, Christina M. Finn, James R. Hannah (argued), Kristopher B. Kastens, Lisa Kobialka, Michael H. Lee, KRAMER LEVIN NAFTALIS & FRANKEL LLP, Redwood Shores, CA; Marcus Colucci, Aaron M. Frankel (argued), KRAMER LEVIN NAFTALIS & FRANKEL LLP, New York, NY,

 Attorneys for Plaintiff.

Jack B. Blumenfeld, Jennifer Ying, MORRIS NICHOLS ARSHT & TUNNELL LLP, Wilmington, DE; Alan M. Fisch, Andrew Ramos (argued), Lisa Phillips, Jeffrey M. Saltman, R. William Sigler, FISCH SIGLER LLP, Washington, DC,

 Attorneys for Defendant.

October 19, 2023

**ANDREWS, UNITED STATES DISTRICT JUDGE:**

Before me is the issue of claim construction of multiple terms in U.S. Patent Nos. 6,701,344 ("the '344 patent"), 6,714,966 ("the '966 patent"), 6,732,147 ("the '147 patent"), 6,829,634 ("the '634 patent"), and 6,910,069 ("the '069 patent"). The parties submitted a Joint Claim Construction Brief (D.I. 65) and Appendix (D.I. 66). Defendant submitted an additional letter. (D.I. 72). I heard oral argument on October 4, 2023.[1]

## I. BACKGROUND

On July 6, 2022, Plaintiff Acceleration Bay filed a complaint against Defendant Amazon Web Services, alleging infringement of the '344, '966, '147, '634, and '069 patents. (D.I. 1). These patents disclose networking technologies that promote reliable, efficient broadcast of data through large networks. (D.I. 65 at 6–7). The '344 patent discloses "systems for an effective broadcast technique using a regular network." (D.I. 1 ¶ 10). The '966 patent discloses "systems for providing an information delivery service using a regular network." (*Id.* ¶ 14). The '147 patent discloses "methods and systems for leaving a broadcast channel." (*Id.* ¶ 18). The '634 patent discloses "methods and systems for broadcasting data across a regular network." (*Id.* ¶ 22). The '069 patent discloses "methods for adding a participant to a network without placing a high overhead on the underlying network." (*Id.* ¶ 25).

## II. LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (cleaned up). "'[T]here is no magic formula or catechism for

---

[1] Citations to the transcript of the argument, which is not yet docketed, are in the format "Markman Tr. at ___."

2

conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (alteration in original) (quoting *Phillips*, 415 F.3d at 1324). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (cleaned up). "While claim terms are understood in light of the specification, a claim construction must not import limitations from the specification into the claims." *Deere & Co. v. Bush Hog, LLC*, 703 F.3d 1349, 1354 (Fed. Cir. 2012) (citing *Phillips*, 415 F.3d at 1323).

"[T]he words of a claim 'are generally given their ordinary and customary meaning.' . . . [It is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Phillips*, 415 F.3d at 1312–13 (citations omitted). "[T]he 'ordinary meaning' of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321. "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When a court relies solely on the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015). The court may also make factual

findings based on consideration of extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19 (quoting *Markman*, 52 F.3d at 980). Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

## III. CONSTRUCTION OF AGREED-UPON TERMS

I adopt the following agreed-upon constructions (D.I. 65 at 2–5):

| Claim Term | Claims | Construction |
|---|---|---|
| "A distributed game system comprising:"; "A computer network for providing a game environment for a plurality of gaming participants, each gaming participant having connections to at least three neighbor gaming participants," / "A computer network for providing an information delivery service for a plurality of participants, each participant having connections to at least three neighbor participants,"; "A non-routing table based broadcast channel for participants, comprising" / "A non-routing table based computer network having a plurality of participants, each participant being an application program, and each participant having connections to at least three neighbor participants,"; | '344 patent, claims 13, 21<br><br>'966 patent, claim 1<br><br>'634 patent, claims 10, 25<br><br>'147 patent, claim 6<br><br>'069 patent, claim 1 | These preambles are limiting |

| | | |
|---|---|---|
| "A method for healing a disconnection of a first computer from a second computer, the computers being connected to a broadcast channel, said broadcast channel being an m-regular graph where m is at least 3, the method comprising:"; "A computer-based, non-routing table based, non-switch based method for adding a participant to a network of participants, each participant being connected to three or more other participants, the method comprising:" | | |
| "network is m-regular" "in a manner as to maintain an m-regular graph" | '344 patent, claims 13, 21 '966 patent, claims 1, 19 '634 patent, claims 10, 25 '147 patent, claim 6 | A state that the network is configured to maintain, where each participant is connected to exactly m neighbor participants. |
| "wherein an originating participant sends data to the other participants by sending the data through each of its connections to its neighbor participants" "wherein an originating participant sends gaming data to the other gaming participants by sending the gaming data through each of its connections to its neighbor gaming participants" "a broadcast component that receives data from a neighbor participant using the | '344 patent, claims 13, 25 '966 patent, claims 1, 19 '634 patent, claims 10, 25 | Data is sent from an originating participant to the other participants by broadcasting data through each of its connections to its neighbor participants. |

| | | |
|---|---|---|
| communications network and that sends the received data to its other neighbor participants" | | |
| "thus resulting in a non-complete graph" | '344 patent, claims 13, 21<br><br>'966 patent, claims 1, 19<br><br>'634 patent, claims 10, 25 | The graph is configured to maintain a non-complete state. |
| "m-connected" | '634 patent, claims 10, 25 | A state that the network is configured to maintain, where the network may be divided into disconnected subnetworks by the removal of m participants in a steady state. |
| "sends an edge connection request to a number of randomly selected neighboring participants to which the seeking participant is to connect" | '069 patent, claim 1 | Sends a message through a number of randomly selected connections until fully connected participants are identified to which the seeking participant is to connect. |
| "broadcast channel" | '344 patent, claims 13, 21<br><br>'966 patent, claims 12, 19<br><br>'634 patent, claims 10, 11, 15–18, 25<br><br>'147 patent, claims 6, 9 | An overlay network of interconnected computers/participants where each computer/participant receives all data broadcasted on the network. |
| "participants" | '344 patent, claims 13, 21<br><br>'966 patent, claim 1<br><br>'634 patent, claims 10, 25<br><br>'069 patent, claim 1 | Computers or computer processes that are connected by a network. |
| "computer network" | '344 patent, claim 21<br><br>'966 patent, claims 1, 19<br><br>'634 patent, claim 25 | A group of connected computers or computer processes. |
| "each participant having connections to at least three neighbor participants" | '344 patent, claims 13, 15, 21<br><br>'966 patent claims 1, 19 | Each participant being connected to the same number of other participants |

| | | |
|---|---|---|
| "player computers that are each interconnected to at least three other computers"<br><br>"each gaming participant having connections to at least three neighbor gaming participants"<br><br>"each computer connected to the broadcast channel is connected to at least three other computers" | '634 patent, claim 25<br><br>'147 patent, claim 9 | in the network, where the number is three or more. |
| "healing a disconnection of a first computer from a second computer" | '147 patent, claim 6 | Plain and ordinary meaning/no construction required, i.e., restoring the state of the network after the disconnection of a first computer from a second computer. |

## IV. CONSTRUCTION OF DISPUTED TERMS

The parties agree that claim 1 of the '069 patent and claim 21 of the '344 patent are representative for the purpose of claim construction. Those claims state:

> 1. A computer-based, non-routing table based, non-switch based method for adding a participant to a ***network of participants, each participant being connected to three or more other participants***, the method comprising:
>
> identifying a pair of participants of the network that are connected wherein a seeking participant contacts a fully connected portal computer, which in turn sends an edge connection request to a number of randomly selected neighboring participants to which the seeking participant is to connect;
>
> disconnecting the participants of the identified pair from each other; and
>
> connecting each participant of the identified pair of participants to the seeking participant.

('069 patent at 28:49–62 (disputed terms bolded and italicized)).

7

21. A computer network for providing a game environment for a plurality of gaming participants, each gaming participant having connections to at least three neighbor gaming participants,

    wherein an originating gaming participant sends gaming data to the other gaming participants by sending the gaming data through each of its connections to its neighbor gaming participants and wherein each gaming participant sends gaming data that it receives from a neighbor gaming participant to its other neighbor gaming participants;

    further wherein the network is m-regular, where m is the exact number of neighbor gaming participants of each gaming participant,

    further wherein the number of gaming participants is at least two greater than m thus resulting in a noncomplete graph,

    further wherein the connections between the gaming participants are ***peer-to-peer connections***,

    further wherein the network is formed through a broadcast channel that overlays an underlying network,

    further wherein the game environment is provided by at least one game application program executing on each computer of the computer network that interacts with the broadcast channel, and

    further wherein gaming participants can join and leave the network using the broadcast channel.

('344 patent Inter Partes Review Certificate at 1:8–2:17 (disputed terms bolded and italicized)).

1. **"network of participants, each participant being connected to three or more other participants" ('069 patent, claim 1)**

    a. *Plaintiff's proposed construction*: plain and ordinary meaning/no construction required, i.e., participants that are connected by a network where each participant must be connected to at least three other participants, but there is no requirement that each participant is connected to the same number of other participants
    b. *Defendant's proposed construction*: a network configured to maintain a state where each participant is connected to the same number of other participants, where the number is at least three
    c. *Court's construction*: a network configured to maintain a state where each participant is connected to the same number of other participants, where the number is at least three

8

The parties dispute whether this term requires each participant to be connected to the same number of other participants.

Plaintiff argues that the plain language of claim 1 of the '069 patent neither precludes nor requires an m-regular network. (D.I. 65 at 16). Plaintiff contends that Defendant's proposed construction would import an m-regular network limitation into the claim. (*Id.* at 17–18). Plaintiff argues that the specification discloses m-regular networks but does not limit claim 1's scope to those networks only. (*Id.* at 18). Plaintiff also contends that Defendant's proposed construction would exclude embodiments, as the '069 patent describes embodiments that are not m-regular. (*Id.* at 21, 23–24). Plaintiff further argues that construing claim 1 as requiring an m-regular network is unnecessary "to obtain a meaningful invention" because both m-regular and non-m-regular networks address the problem of "elongation," which is the focus of claim 1. (*Id.* at 17; *see also* Markman Tr. at 11:21–12:25).

Relying on claim differentiation principles, Plaintiff argues the inventors made a drafting choice to exclude an m-regular limitation from claim 1. (D.I. 65 at 34–35; *see also* Markman Tr. at 7:9–11, 7:16–19). Plaintiff points out that other claims in the '069 patent and claims in the other patents include clear express m-regular network limitations. (D.I. 65 at 18; *see also* Markman Tr. at 7:6–9). Plaintiff points out that claim 14 of the '069 patent, claim 19 of the '634 patent, and claim 13 of the '344 patent all include express m-regular network limitations. (D.I. 65 at 19–20). Plaintiff contends that comparing claim 1 to these claims shows that the inventors "demonstrated a clear intention to vary the scope of their claims." (*Id.* at 20).

9

In response, Defendant argues that Plaintiff raises many of the same arguments it argued in an earlier case, where I adopted the construction Defendant now proposes.[2] (*Id.* at 26, 37–38). Defendant also contends that all asserted claims of the '344, '966, '634, '147, and '069 patents "include substantially similar limitations requiring 'at least three,' or 'three or more,' directly connected participants." (*Id.* at 25). Defendant points out that Plaintiff agreed these limitations should be construed as "each participant being connected to the same number of other participants in the network, where the number is three or more," for the '344, '966, '634, and '147 patents. (*Id.*). Defendant argues that because all five patents "have nearly identical disclosures," I should adopt its proposed construction for the disputed term in claim 1 of the '069 patent. (*Id.* at 26). At oral argument, for the first time, Defendant argued that its proposed construction requires participants to be m-connected, but that m-regularity is not required. (Markman Tr. at 21:1–3, 21:17–19).[3]

Defendant further contends that Plaintiff's claim differentiation argument lacks merit. Defendant argues that "claim differentiation is most relevant where a dependent claim includes a limitation missing from the independent claim from which it depends." (D.I. 65 at 38).

---

[2] Defendant suggests that the Federal Circuit affirmed my previous construction of the disputed term. (*See* Markman Tr. at 20:3–13). The Federal Circuit did not. *See Acceleration Bay LLC v. 2K Sports, Inc.*, 15 F.4th 1069, 1077 (Fed. Cir. 2021) ("[Appellee] points out that the district court did not only construe the term 'fully connected portal computer' to include the limitation, but it also construed the term 'each participant being connected to three or more other participants' to include it. Because Acceleration Bay does not challenge the district court's latter construction, [Appellee] argues that the appeal necessarily fails. We agree." (citations omitted)). Since Acceleration Bay did not challenge the construction, the Federal Circuit had no occasion to decide whether it was correct.

[3] The parties agree that the term "network is m-regular" should be construed as "[a] state that the network is configured to maintain, where each participant is connected to exactly m neighbor participants." (*See* D.I. 65 at 3). The parties also agree that the term "m-connected" should be construed as "[a] state that the network is configured to maintain, where the network may be divided into disconnected sub-networks by the removal of m participants in a steady state." (*Id.*).

10

Defendant points out that none of the dependent claims that depend on claim 1 of the '069 patent recite m-regular limitations, and the only claim in the '069 patent that includes such a limitation is claim 14, an independent claim. (*Id.* at 29–30).

Defendant also relies on the specification to support its position. For example, Defendant contends that the figures in the specification show that participants have the same number of connections. (*Id.* at 31). Even if some participants temporarily have fewer than m connections, Defendant argues that a network may still qualify as m-regular when all participants are configured to maintain a designated number of connections. (*Id.* at 31–33).

The plain language of the claim—"each participant being connected to three or more other participants"—is ambiguous. On the one hand, this language could be read to mean that each participant is connected to "x" participants, where "x" is three or more. On the other hand, the same language could be read to mean that each participant is connected to at least three participants, where the number of connections may vary greatly. Because this claim language is subject to more than one interpretation, I turn to the surrounding claim language and the specification to construe the term.

I agree with Defendant that the language of claim 1 indicates each participant must be connected to the same number of other participants. One limitation of claim 1 recites that a participant contacting a fully connected portal computer "sends an edge connection request to a number of randomly selected neighboring participants to which the seeking participant is to connect." ('069 patent at 28:53–58). This limitation refers to a random walk. (*Id.* at 13:36–43).[4]

---

[4] Plaintiff agrees that claim 1 of the '069 patent requires a random walk but contends that a random walk does not require each participant to have the same number of connections. (Markman Tr. at 42:9–15).

11

The random walk is only present in a "large regime." (*Id.*; *see also id.* at 19:60–65). A large regime requires m-regularity (*see id.* at 5:26–32), and m-regularity requires each participant to be connected to the same number of participants. The specification supports this construction.[5]

Plaintiff's reliance on claim differentiation is unpersuasive. At oral argument, Plaintiff stated that the five patents-in-suit are not legally related. (Markman Tr. at 7:20–8:4). Therefore the '344, '966, '147, and '634 patents are not intrinsic evidence, and arguments based on them and their claims are irrelevant. They do not support Plaintiff's position. The remainder of Plaintiff's claim differentiation argument rests on a comparison between independent claim 1 and independent claim 14 of the '069 patent. ('069 patent at 28:49–62, 30:3–18). The intrinsic evidence—the comparison of the language in the two independent claims—is insufficient to show that claim 1 has different scope than claim 14. *See Hormone Rsch. Found., Inc. v. Genentech, Inc.*, 904 F.2d 1558, 1567 n.15 (Fed. Cir. 1990) ("It is not unusual that separate claims may define the invention using different terminology, especially where (as here) independent claims are involved." (citation omitted)).

I therefore reject Plaintiff's proposed construction, and I adopt Defendant's proposed construction. I construe "network of participants, each participant being connected to three or more other participants" to mean "a network configured to maintain a state where each participant is connected to the same number of other participants, where the number is at least three."

2. **"each participant being connected to three or more other participants" ('069 patent, claim 1)**

---

[5] This construction is consistent with my previous construction of "each participant being connected to three or more other participants." *See Acceleration Bay LLC v. Take-Two Interactive Software, Inc.*, No. 16-455 (D. Del. Dec. 20, 2017), D.I. 345 at 14–15.

a. *Plaintiff's proposed construction*: plain and ordinary meaning/no construction required, i.e., each participant must be connected to at least three other participants, but there is no requirement that each participant is connected to the same number of other participants
b. *Defendant's proposed construction*: each participant is connected to the same number of other participants in the network, where the number is at least three
c. *Court's construction*: each participant is connected to the same number of other participants in the network, where the number is at least three

For the same reasons as above, I reject Plaintiff's proposed construction and adopt Defendant's proposed construction.

### 3. "peer-to-peer connections" ('344 patent, claim 21; '966 patent, claim 19; '634 patent, claim 25)

a. *Plaintiff's proposed construction*: peer-to-peer connections are connections between peer participants; peers are participants that are equally able to send and receive information
b. *Defendant's proposed construction*: connections between participants forming a point-to-point graph through which participants both transmit and relay information
c. *Court's construction*: peer-to-peer connections are connections between peer participants; peers are participants that are equally able to send and receive information

The parties dispute whether this term requires participants to both send and receive information or merely to be able to both send and receive information. The parties also dispute whether the connections at issue must form a point-to-point graph.

Plaintiff contends that the term "peer-to-peer connections" should be given its plain and ordinary meaning. (D.I. 65 at 42). At oral argument, Plaintiff argued that "peer-to-peer" is a commonly understood term with a well-known definition. (Markman Tr. at 51:2–5). Plaintiff contends that the specification of the '344 patent does not "ascribe any special meaning" to this term. (D.I. 65 at 42). Plaintiff therefore contends that the term simply refers to connections between peers. (*Id.*).

Plaintiff argues that construing the term to include "point-to-point graph" would impermissibly import a limitation into the claim. Relying on the specification, Plaintiff contends

13

that adding "point-to-point graph" to the construction would exclude embodiments. The specification states: "[t]he peer-to-peer middleware communications systems rely on a multicasting network protocol or a graph of point-to-point network protocols." ('344 patent at 2:23–25). Plaintiff thus argues that Defendant's proposed construction excludes a multicasting network. (*See, e.g.*, Markman Tr. at 56:12–21).

Plaintiff also argues that construing the term to include "both transmit and relay information" would make other limitations superfluous. (D.I. 65 at 42–43). At oral argument, Plaintiff argued that claim 21 of the '344 patent does not require all participants to send and receive information. (Markman Tr. at 52:11–20). Part of claim 21 recites that "an originating gaming participant sends gaming data to the other gaming participants by sending the gaming data through each of its connections to its neighbor gaming participants . . . ." Plaintiff contends that this limitation relates to sending and receiving information, making it unnecessary to import "both transmit and relay information" to the construction of "peer-to-peer connections." (D.I. 65 at 42–43).

In response, Defendant contends that "the patents repeatedly describe the claimed connections using graph theory." (*Id.* at 44). Defendant cites to several parts of the specification, including language that "[a] broadcast technique in which a broadcast channel overlays a point-to-point communications network is provided." (*Id.*). Defendant further contends that the "point-to-point" language is "consistent with how the patents describe peer-to-peer networks." (*Id.*).

Defendant argues that the claim requires participants to transmit and relay information. (*Id.* at 45). Defendant contends that the prosecution history supports its position because Plaintiff added "'peer-to-peer connections' and other amended language to overcome rejections"

14

during inter partes review ("IPR"). (*Id.* at 45, 49). Defendant argues that Plaintiff's proposed construction "does not seem to exclude client-server systems, or otherwise resolve any dispute between the parties." (*Id.* at 46).

I agree with Plaintiff that the claim and specification do not require "peer-to-peer connections" to be construed as requiring a point-to-point graph or requiring participants to both transmit and relay information. Claim terms are "generally given their ordinary and customary meaning as understood by a person of ordinary skill in the art when read in the context of the specification and prosecution history." *Thorner v. Sony Comput. Ent. Am. LLC*, 669 F.3d 1362, 1365 (Fed. Cir. 2012) (citing *Phillips*, 415 F.3d at 1313). Two exceptions apply: (1) when patentees act as their own lexicographers by setting out definitions, and (2) when patentees disavow a claim term's full scope during prosecution or in the specification. *Id.* (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1580 (Fed. Cir. 1996)). The use of the term "peer-to-peer connections" does not meet either exception.

A patentee acts as its own lexicographer only if it "clearly set forth a definition of the disputed claim term" in the specification. *Id.* (quoting *CCS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002)). The patentee must "clearly express an intent" to provide a definition other than the plain and ordinary meaning; disclosing one embodiment or using a word in the same way in all embodiments is insufficient. *Id.* (quoting *Helmsderfer v. Bobrick Washroom Equip., Inc.*, 527 F.3d 1379, 1381 (Fed. Cir. 2008)). The '344 patent's specification does not provide a definition of "peer-to-peer connections" that differs from the term's plain and ordinary meaning. (*See generally* '344 patent). In other words, the specification does not redefine "peer-to-peer connections" to require a point-to-point graph or the transmittal and

15

receipt of information. I thus find that the lexicography exception does not apply here. (*See* Markman Tr. at 64:18–24).

Disavowal, meanwhile, requires the specification to clearly show that the "invention does not include a particular feature." *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1341 (Fed. Cir. 2001). The specification must be "both so clear as to show reasonable clarity and deliberateness, and so unmistakable as to be unambiguous evidence of disclaimer." *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1322 (Fed. Cir. 2012) (internal citation omitted). To find disavowal of claim scope through disparagement of a particular feature, I must determine whether "the specification goes well beyond expressing the patentee's preference . . . [such that] its repeated derogatory statements about [a particular embodiment] reasonably may be viewed as a disavowal." *Chicago Bd. Options Exch., Inc. v. Int'l Sec. Exch., LLC*, 677 F.3d 1361, 1372 (Fed. Cir. 2012). A patentee's statements during an IPR may also support a finding of disavowal. *See Aylus Networks, Inc. v. Apple Inc.*, 856 F.3d 1353, 1359 (Fed. Cir. 2017).

Neither the '344 patent's specification nor the statements made during IPR proceedings rise to the level of clear and unmistakable disclaimer. Defendant did not dispute this at oral argument. (*See* Markman Tr. at 65:2–5 ("We're not arguing there's disclaimer here . . . .")). Defendant instead argued that Plaintiff "described [its] own patents in a way that goes at odds with the ordinary meaning" of the disputed term. (*Id.*). Given the lack of lexicography or disavowal, however, there is insufficient evidence in the patent to deviate from the plain and ordinary meaning of "peer-to-peer connections."

I thus find that Defendant's proposed construction would import limitations into claim 21. Such a construction would contradict the claim's plain language. *See Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998) ("The construction that stays true to the

16

claim language and most naturally aligns with the patent's description of the invention will be, in the end, the correct construction."). I therefore reject Defendant's proposed construction, and I adopt Plaintiff's proposed construction. The term "peer-to-peer connections" has its plain and ordinary meaning, which is "connections between peer participants." Peers are "participants that are equally able to send and receive information."

## V.  CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion.